Filed 6/8/23 P. v. Tumua CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Butte)

----

|  |  |
|---|---|
| THE PEOPLE, | C095960 |
| Plaintiff and Respondent, | (Super. Ct. Nos. 21CF00458, 20CM05333, 21CF00903, 21CM00916) |
| v. | |
| RONNIE TUMUA, | |
| Defendant and Appellant. | |

To resolve four separate cases and some additional uncharged misconduct in jail, defendant pled no contest to two counts of vandalism, one count of battery, disobeying a domestic violence order, trespass, driving under the influence, obstructing, or delaying a peace officer, and battery on a custodial officer. The trial court sentenced defendant to four years four months in state prison which included the upper term on the principal count. On appeal, defendant argues his sentence should be vacated and the matter remanded for resentencing in light of Senate Bill No. 567 (2021-2022 Reg. Sess.) (Senate Bill 567), which altered the methodology for selecting an appropriate triad term. (Pen.

1

Code, § 1170, subd. (b); Stats. 2021, ch. 731, § 1.3, eff. Jan. 1, 2022.)[1]  The Attorney General agrees.  We will affirm the convictions, vacate the sentence, and remand for resentencing.

## I.  BACKGROUND

### 1.  Case No. 20CM05333[2]

On September 20, 2020, officers responded to a report of a group of males in a parking lot with a shotgun.  Upon their arrival, the group dispersed.  When later apprehended, defendant acted in a threatening manner towards the officers, and the officers used a taser to subdue him.  The complaint in this case charged defendant with resisting, delaying, or obstructing a peace officer.  (§ 148, subd. (a)(1).)  By amendment, the complaint also charged defendant with failure to appear.  (§ 853.7.)

### 2.  Case No. 21CF00458

While he was in jail on January 30, 2021, defendant refused deputies' orders to put his hands behind his back.  When officers secured his arms, he resisted and was able to escape their control.  A deputy pushed him into a cell and tried to exit at which time defendant punched that deputy.  The deputy struck defendant who then hit him back.  The first amended information in this case charged defendant with battery on a custodial officer.  (§ 243.1.)  It also alleged a prior serious felony conviction and a strike conviction from Colorado.

### 3.  Case No. 21CF00903

This case covers four separate incidents.

---

[1]  Undesignated statutory references are to the Penal Code.

[2]  Because this case resolved on pleas of no contest, we take the facts from the probation report.

On November 25, 2021, defendant arrived at his mother's residence and began yelling. When T.N. came outside to help defendant, he engaged in a yelling tantrum and repeatedly hit T.N. in the face and head with his fists.

On November 29, 2020, defendant used a stick to break the rear window of a car belonging to a family member.

On January 28, 2021, defendant broke into his mother's apartment, damaged the front door, and took some food.

On January 29, 2021, in violation of a restraining order, defendant forced his way into his mother's apartment, damaged the door, and was taking a shower.

The first amended consolidated information for these incidents charged defendant with two counts of felony vandalism (§ 594, subd. (a)); one count of battery (§ 242, subd. (a)); two counts of misdemeanor vandalism (§ 594, subd. (a)); disobeying a domestic relations court order (§ 273.6, subd. (a)); and aggravated trespass (§ 602.5, subd. (b)). With respect to the first two counts of vandalism, this information alleged a prior strike from the State of Colorado under sections 667, subdivisions (b)-(i) and 1170.12.

4. Case No. 21CM00916

Finally, on November 28, 2021, officers responded to a report of a reckless driver driving at over 100 miles per hour on Highway 70 and a single-car rollover accident. When officers arrived, the car was resting on its roof, and defendant was standing up inside of the car holding an unopened mini bottle of whiskey. Defendant smelled of alcohol and admitted he was driving 120 miles per hour when he lost control of the car. The complaint in this case charged defendant with driving under the influence of alcohol and a drug. (Veh. Code, § 23152, subd. (g).)

In addition to these cases, correctional officers reported an incident between defendant and another inmate where defendant hit the other inmate in the face with his fists.

3

To resolve the charged cases and the uncharged misconduct, defendant agreed to plead no contest to two counts of felony vandalism (§ 594), one count of battery (§ 242), disobeying a domestic violence order (§ 273.6), and aggravated trespass (§ 602.5, subd. (b)) in case No. 21CF00903; one misdemeanor violation of driving under the influence (Veh. Code, § 23152, subd. (g)) in case No. 21CM00916; one count of battery on a custodial officer (§ 243.1) in case No. 21CF00458; and one count of obstructing or delaying a peace officer in the lawful discharge of his duties (§ 148, subd. (a)) in case No. 21CM05333. In exchange, the district attorney agreed to dismiss remaining counts and cases and not to file charges in the uncharged misconduct. Defendant stated he understood he faced a maximum sentence of four years four months in state prison.

The probation report states defendant had six prior convictions, all in Colorado, and a single prison term. The arrests for these convictions span from 2012 to 2019 and the probation report lists four of the six conviction dates as "unknown," and one of the dispositions as "unknown." The report shows convictions for robbery, driving under the influence, bribery, three assaults, "crimes against person," and disorderly conduct (fighting in public). At some point after June 2015, defendant was sentenced to four years in the Colorado Department of Corrections, then paroled at an unknown date thereafter, and returned to custody twice (in November and December 2018) for parole violations. The probation report does not indicate what information or records it relied upon in recounting this history. In defendant's statement to the court, he acknowledges his prior prison term in Colorado for robbery and menacing with a weapon and "many jail sentences and prison sentence and turnarounds."

At sentencing in November 2021, the trial court sentenced defendant to the upper term of three years in state prison for the battery against a custodial officer (§ 243.1, case No. 21CF00458). The court found as circumstances in aggravation that defendant's prior convictions as an adult were numerous and increasing in seriousness, defendant served a prior prison term, and his prior performance on parole supervision was unsatisfactory.

4

The trial court found no circumstances in mitigation. The court added two consecutive eight-month terms for the felony vandalism counts (§ 594, subd. (a), case No. 21CF009003) and imposed concurrent sentences on the other misdemeanor charges. The aggregate term of imprisonment was four years four months.

We deemed defendant's untimely filed notice of appeal as timely under the constructive filing doctrine.

## II. DISCUSSION

Defendant argues we must vacate his sentence and remand for a full resentencing hearing in light of the legislative changes brought about by Senate Bill 567. The People agree Senate Bill 567 applies retroactively and that remand is necessary. We agree that the amendments to section 1170 apply retroactively to defendant's nonfinal judgment on appeal. (*People v. Zabelle* (2022) 80 Cal.App.5th 1098, 1109 (*Zabelle*).) We also agree that remand is necessary, but only after applying the analysis set forth in *Zabelle*.

Effective January 1, 2022, when a judgment of imprisonment is to be imposed and the statute specifies three possible terms, the trial court must impose a term not exceeding the middle term unless there are circumstances in aggravation that justify the imposition of a term exceeding the middle term and the facts underlying those aggravating circumstances (1) have been stipulated to by the defendant, (2) have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial, or (3) relate to the defendant's prior convictions and are based on a certified record of conviction. (§ 1170, subd. (b)(1)-(3); Stats. 2021, ch. 731.)

Here, the trial court found multiple circumstances in aggravation to justify the imposition of the upper term, consisting of the following: Defendant's prior convictions as an adult were numerous and increasing in seriousness, defendant served a prior prison term, and his prior performance on parole supervision was unsatisfactory. None of these aggravating circumstances were determined by a jury, a court trial, or stipulated to by

5

defendant. The trial court did not make these findings as required by Senate Bill 567. (§ 1170, subd. (b)(1), (2).)

The trial court did not have the benefit of the amendments to section 1170 when it sentenced defendant. But, "before finding remand appropriate, [we] must first subject the trial court's error to harmless error review." (*Zabelle*, *supra*, 80 Cal.App.5th at p. 1110.) This requires a two-step analysis for determining harmless error: (1) whether the court could impose the aggravated term under the Sixth Amendment, and (2) whether the court would impose the aggravated term under section 1170. (*Zabelle*, at p. 1112.) We review the first question for prejudice under the standard described in *Chapman v. California* (1967) 386 U.S. 18, and the second question under the standard in *People v. Watson* (1956) 46 Cal.2d 818. (*Zabelle*, at p. 1112.) Under the *Chapman* analysis, " '[I]f a reviewing court concludes, beyond a reasonable doubt, that the jury, applying the beyond-a-reasonable-doubt standard, unquestionably would have found true at least a single aggravating circumstance had it been submitted to the jury, the Sixth Amendment error properly may be found harmless.' " (*Zabelle,* at p. 1111.)

With this framework in mind, we examine the aggravating circumstances the trial court found true under the *Chapman* standard. As to the first aggravating circumstance relied upon by the sentencing court, the question of whether defendant's record and prior offenses were numerous and increasing in seriousness, the court relied upon the probation report that did not document how it got the prior history information from Colorado. Four of the six referenced out-of-state convictions listed for the defendant contained dates that were unknown. Further, defendant's six alleged convictions do not follow a pattern of increasing seriousness as the first 2012 conviction was a felony robbery and misdemeanor and the last was reduced from an arrest for contempt of court to a conviction for fighting in public.

As instructed by our high court, "[T]o the extent a potential aggravating circumstance at issue in a particular case rests on a somewhat vague or subjective

6

standard, it may be difficult for a reviewing court to conclude with confidence that, had the issue been submitted to the jury, the jury would have assessed the facts in the same manner as did the trial court." (*People v. Sandoval* (2007) 41 Cal.4th 825, 840, superseded by statute as stated in *People v. Lewis* (2023) 88 Cal.App.5th 1125, 1132.) (Compare *People v. Black* (2007) 41 Cal.4th 799, 818-820.) In light of the deficiencies of the criminal history information recited in the probation report and the nature of the qualitative assessment required for this circumstance, we cannot conclude, beyond a reasonable doubt, that the jury, applying the beyond-a-reasonable-doubt standard, unquestionably would have found this first factor of numerosity and seriousness true under *Chapman* standard. But, we do not come to the same conclusion for the other aggravating factors.

With respect to whether the defendant had served a prior prison term and whether his performance on parole supervision was unsatisfactory, the trial court again relied upon the probation report to summarize defendant's out-of-state record. While there was not a certified record of conviction presented to the trial court, the report identifies a prison term and subsequent parole violations. In his statement to probation, the defendant explicitly, and in writing, admits to serving a prison term in Colorado for robbery and menacing with a weapon and references his "many jail sentences and prison sentence and turnarounds." His counsel also did not object when the trial court found these circumstances true. Based upon defendant's admissions in the probation report and his failure to object, we conclude the jury, applying the beyond-a-reasonable-doubt standard, unquestionably would have found both of these circumstances in aggravation to be true.

We next turn to the second step of the *Zabelle* analysis, whether or not the court would have imposed the aggravated term under section 1170 applying the harmless error standard in *People v. Watson*, *supra*, 46 Cal.2d 818. (*Zabelle*, *supra*, 80 Cal.App.5th at p. 1112.) As applied to his case, we must "first, for each aggravating fact, consider

7

whether it is reasonably probable that the jury would have found the fact not true. We must then, with the aggravating facts that survive this review, consider whether it is reasonably probable that the trial court would have chosen a lesser sentence had it considered only these aggravating facts." (*Ibid*.) For the same reasons we discussed *ante* under the *Chapman* review, we conclude it is reasonably probable under the *Watson* standard both that the jury would find the increasing numerosity and seriousness aggravating circumstance not to be true and the prior prison term and unsatisfactory performance on probation aggravating circumstance to be true.

Given the existence of two circumstances the trial court could properly consider and one it could not, we are not convinced that the trial court would have found the facts of the prior prison term and the defendant's violations of parole to be sufficient to warrant the imposition of the upper term. The trial court simply listed three aggravating circumstances and did not assess any weight to them. Although the trial court found there were no mitigating circumstances present, the trial court did not indicate whether the imposition of the upper term was or was not a close call. We conclude it is reasonably probable that the trial court would have chosen a lesser sentence had it considered only the second and third aggravating circumstances without consideration of the first aggravating circumstance.

Based upon the discussion *ante* and the Attorney General's concession, we shall vacate defendant's sentence and remand the case for resentencing. (*People v. Garcia* (2022) 76 Cal.App.5th 887, 902.) Both sides will be entitled to a new sentencing hearing and to present any aggravating or mitigating circumstances to the court in accordance with current law. We express no opinion as to the appropriate sentence on remand.

## III. DISPOSITION

Defendant's convictions are affirmed, but the sentence is vacated, and the matter is remanded for resentencing.

_____/s/_____
HORST, J.*

We concur:

_____/s/_____
RENNER, Acting P. J.

_____/s/_____
BOULWARE EURIE, J.

---

* Judge of the Placer County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.